UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUAN FRANCISCO VEGA,

    Plaintiff,

v.                                    Case No: 2:14-cv-202-FtM-29MRM

TIMOTHY J. BUDZ, Administrator, DONALD A. SAWYER, Assistant Facility Administrator - Operations, BRIAN L. MASONY, Attorney, MARK SNYDER, Investigator, CRAIG BELOFF, Security Major, and REBECCA JACKSON,

    Defendants.

_____

**ORDER OF PARTIAL DISMISSAL**

    This matter comes before the Court upon review of the file. By way of background, this civil case was opened upon the Court's Order directing that one civil action filed by two, *pro se* plaintiffs, who are both civilly confined residents at the Florida Civil Commitment Center ("FCCC"), be separated into two civil actions.  See Doc. #2.  Plaintiff Juan Francisco Vega is now proceeding on his Third Amended Complaint (Doc. #5, Third Amended Complaint) against defendants Timothy Budz, who Plaintiff states is the Facility Administrator; Donald Sawyer, Assistant Facility Administrator-Operations; Brian Masony, attorney; Mark Snyder, Investigator; Craig Beloff, Security Major; and Rebecca Jackson, Clinical Director, in their official and individual capacities.

Third Amended Complaint at 1, 3-4. The Third Amended Complaint attempts to allege two First Amendment violations: (1) an interference with the access to court claim; and (2) a claim of retaliation stemming from Plaintiff's placement in either "segregation" or "wing restriction" for arguably protected speech. Id. at 4.

For the reasons that follow, the Court finds the Third Amended Complaint fails to state a plausible access to the court claim under the First Amendment. However, the Court will allow for the development of the retaliation claim.

**I.**

According to the Third Amended Complaint, Plaintiff arrived at the FCCC on March 13, 2011. Id. at 6. Shortly thereafter, Plaintiff alleges that he "discovered a loophole in the Jimmy Ryce Act" and disclosed it to other FCCC residents orally and by writing an article entitled "The Legal Loophole of the Jimmy Ryce Act," which was printed and distributed. Id. As a result, Plaintiff claims FCCC officials placed him on a "high risk wing restriction unit" for a period of nine and six months, respectively. Id. The Third Amended Complaint does not specify whether there were two separate incidents of wing restriction, or whether it was one continual period of wing restriction.[1] See generally id.

---

[1] The Third Amended Complaint does reference one period of "lockdown" from October 2, 2012 through November 30, 2012. Third

On October 18, 2011, Plaintiff states that he helped another FCCC resident in a complaint for declaratory judgment filed in state court. On October 21, 2011, a detective from the Desoto County Sheriff's Office served Plaintiff with a search warrant regarding a flash drive confiscated by FCCC officials on September 19, 2011. Plaintiff was placed on wing restriction on an unspecified date and advised by FCCC officials in October of 2012 that he was held on restriction due to a pending investigation by the Desoto County Sheriff's Office for practicing law without a license. Id. at 8. FCCC officials maintained that Plaintiff was held on wing restriction due to the pending investigation for practicing law without a license, but Plaintiff claims there never was an investigation for such charges. Id. at 8, 12.

While on wing restriction, Plaintiff claims he was prohibited from: watching television or having an electronic device, wearing civilian clothes, having incoming telephone calls, purchasing canteen items; and limited to: three hours of time outdoors, two visitations from family or friends a week, and two hours of access to the law library that has computers.

Plaintiff alleges that the limited access to the law library impeded his ability to litigate non-frivolous claims and references a state court case, and federal civil case numbers 2:12-

---

Amended Complaint at 13; but see id. at 6 (referencing two separate incidents).

cv-133 and 2:14-cv-202, which is the instant case. Id. at 11. Additionally, Plaintiff blames the FCCC policy limiting residents to eight postage stamps a month as impacting his ability to litigate. Id. As relief, Plaintiff seeks preliminary and permanent injunction and an order requiring Defendants to rectify the policies; direct Defendants to reimburse Plaintiff his court costs and attorney fees; and, aware Plaintiff compensatory and punitive damages in the amount of $500,000.00 per Defendant. Id. at 17.

**II.**

Despite plaintiff's non-prisoner status,[2] the Court is required to review the Third Amended Complaint to determine whether the Complaint is frivolous, malicious or fails to state a claim because Plaintiff is proceeding *in forma pauperis*. See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). In essence, § 1915(e)(2) is a screening process, to be applied *sua sponte* and at any time during the proceedings. Under § 1915, the Court shall dismiss if the Court

---

[2]The Court recognizes that certain portions of the Prison Litigation Reform Act are not applicable to plaintiff as a civil detainee. Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002). The United States Court of Appeals for the Eleventh Circuit previously found that a district court did not err by dismissing a complaint filed by a civil detainee for failure to state a claim under the *in forma pauperis* statute, 28 U.S.C. Section 1915 (e)(2)(B). Id. at 1260. Other Courts have also found that section 1915(e)(2)(B) is not limited to prisoners, but applies to all persons proceeding *in forma pauperis*. See Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001).

determines that the action is "frivolous or malicious"; "fails to state claim on which relief may be granted"; or, "seeks monetary relief from a defendant who is immune from such relief." Id. Because plaintiff is proceeding *in forma pauperis* in this matter, this action is subject to screening for dismissal under § 1915.

In determining the sufficiency of a *pro se* complaint, the Court must construe the *pro se* allegations in a liberal fashion. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted); Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003). The Court must also accept as true all of the allegations in the complaint. Boxer v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006). The Court need not, however, credit a *pro se* plaintiff's "bald assertions" or "legal conclusions." Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1357 (3d ed. 2013) (noting that courts, when examining 12(b)(6) motions, have rejected "legal conclusions," "unsupported conclusions," "unwarranted references," "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions case in the form of factual allegations.")

The standards that apply to a dismissal under Fed. R. Civ. P. 12(b)(6) apply to a dismissal under § 1915. Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008); Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1278-79 (11th Cir. 2001); Mitchell v. Carcass, 112 F.3d 1483, 1490 (11th Cir. 1997). Thus, a complaint is subject to

dismissal for failure to state a claim if the facts as plead do not state a claim for relief that is plausible on its face. Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). A claim is plausible where the plaintiff alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. Twombly, 550 U.S. at 556. Specifically, although a complaint "does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citations omitted). Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. Ashcroft, 129 S. Ct. at 1949. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id.

As this is a § 1983 action, the initial inquiry must focus on the presence of two essential elements:

> (1) whether the person engaged in the conduct complained of was acting under color of state law; and (2) whether the alleged conduct deprived a person of rights, privileges or

> immunities guaranteed under the Constitution or laws of the United States.

Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh, 268 F.3d at 1059; Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994). A defendant who occupies a supervisory position may not be held liable under a theory of *respondeat superior* in a § 1983 action. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-692 (1978); Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003).

**III.**

Based upon a review of the Third Amended Complaint and exhibit attached thereto, the Court finds the Third Amended Complaint fails to articulate a First Amendment access to court claim upon which relief can be granted. Without dispute, Plaintiff has an established constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817 (1977); Barbour v. Haley, 471 F.3d 1222, 1225 (11th Cir. 2006). The Supreme Court in Bounds made clear that institutions must make sure that inmates have "a reasonable adequate opportunity to present claimed violations of fundamental constitutional rights to

the courts." Id. at 825.  Additionally, the Supreme Court explained that a plaintiff who alleges a denial of access to court claim must show how the interference caused the plaintiff harm or prejudice with respect to the litigation.  Lewis, 518 U.S. at 349-351.  "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Id. at 351. Indeed, "[t]he injury requirement is not satisfied by just any type of frustrated legal claim." Id. at 354.  Specifically, a plaintiff must show that the denial of access to court prejudiced him in a criminal appeal, post-conviction matter, or in a civil rights action under 42 U.S.C. § 1983 "to vindicate 'basic constitutional rights.'" Id. (quoting Wolff v. McDonnell, 418 U.S. 539, 579 (1974)).  Lewis, 518 U.S. at 349-351. Moreover, a plaintiff cannot establish the "injury" element, unless the case that plaintiff was unable to pursue had arguable merit.  Id. at 353; Wilson, 163 F.3d 1291.

Here, although Plaintiff attempts to allege an injury by referencing two federal civil rights actions, one of the cases is the instant case, which remains pending.  The other case, case number 2:12-cv-133, involved another First Amendment access to court claim and was dismissed under § 1915 for failure to state a claim.  Because this case did not have arguable merit, Plaintiff has not alleged the requisite injury requirement. Similar to case

number 2:12-cv-133, Plaintiff simply cannot show any injury as a result of the alleged subpar FCCC policies in instant action. There is no "abstract freestanding right to law library or legal assistance." Lewis, 518 U.S. at 351. Consequently, FCCC officials can "impose reasonable restrictions and restraints upon acknowledged propensity of [confined individuals] to abuse both the giving and the seeking of assistance in preparation of applications for relief: for example, by limitations on time and location of such activities and imposition of punishment for the giving or receipt of consideration in connection with such activities." Johnson v. Avery, 393 U.S. 483, 490 (1969). Thus, Plaintiff First Amendment access to court claim is dismissed for failure to state a claim under § 1915.

Turning to Plaintiff's First Amendment retaliation claim, prison officials may not retaliate against confined individuals for filing lawsuits or administrative grievances. Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986) (per curiam). To prevail on a retaliation claim, a plaintiff must allege: (1) his speech was constitutionally protected; (2) he suffered adverse action such that official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. O'Bryant v. Finch, 637 F.2d 1207, 1212 (11th Cir. 2011) (internal quotations omitted);

Moton v. Cowart, 631 F.3d 1337, 1341-42 (11th Cir. 2011).  "To establish causation, the plaintiff must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights."  Moton, 631 F.3d at 1341 (quoting Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008)).  There is no retaliation claim when a defendant can show he or she would have taken the same action in the absence of the protected activity.  Smith v. Fla. Dep't of Corr., 713 F.3d 1059, 1063 (11th Cir. 2013) (citing Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008)).  Here, the Third Amended Complaint alleges that Plaintiff was placed in "wing restriction" for months due to his speech.  Thus, the Court will allow Plaintiff to proceed with this portion of his First Amendment claim.

**IV.**

A review of the docket reveals that the Honorable Douglas N. Frazier ordered Plaintiff to show cause why the action should not be dismissed for failure to comply with the Court's order and submit the requisite number of copies of the Third Amended Complaint and any exhibits attached thereto for service of process.  See Doc. #14.  Plaintiff timely responded to the Show Cause Order by explaining that he no longer has a copy of the Third Amended Complaint because FCCC officials took away his only copy.  Additionally, Plaintiff states that he does not have sufficient funds to pay for any copies.

The Court will not take any further action on the Order to Show Cause, at this time. The Court does note, however, that Plaintiff's application to proceed *in forma pauperis* revealed monthly deposits of $30.00 from the FCCC in Plaintiff's resident account. See Doc. #6. The Court will direct the Clerk to provide a one-time courtesy copy of the Third Amended Complaint to Plaintiff due to allegations that FCCC officials took away his only copy. Additionally, the Court will direct the Clerk to provide Plaintiff with six blank copies of the FCCC Civil Rights Complaint Form. With the courtesy copies provided, Plaintiff can provide handwritten copies in order to comply with the Court's prior order and to continue prosecution of this case. Failure to comply with this order will result in the dismissal of this case without further notice.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The First Amendment access to the court claim contained in the Third Amended Complaint is **DISMISSED** without prejudice under § 1915 for failure to state a claim.

2. The Clerk of Court shall provide Plaintiff with a courtesy copy of his Third Amended Complaint and any attached exhibit thereto (Doc. #5), and six blank copies of the FCCC Civil Rights Complaint Form with the above-styled case number.

    3.  Plaintiff must submit six (6) copies of the Third Amended Complaint in compliance with the Court's prior order (Doc. #11) **on or before November 23, 2015**.  This is Plaintiff's final warning. Failure to comply with this Order will result in the dismissal of this case without further notice.

    **DONE** and **ORDERED** in Fort Myers, Florida on this   12th   day of November, 2015.

                                      */s/ John E. Steele*
                                      JOHN E. STEELE
                                      SENIOR UNITED STATES DISTRICT JUDGE

SA: ftmp-1
Copies: All Parties of Record